# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 20-50569-AMK |
| MIA SIMMONS, | Chapter 7 |
| | Judge Alan M. Koschik |
| Debtor. | |

## OBJECTION TO DEBTOR'S MOTION TO DISMISS AND REQUEST FOR HEARING

Julie K. Zurn, Trustee for the above-captioned case, objects to the motion of Mia A. Simmons (the "Debtor") requesting the entry of an order dismissing her chapter 7 case and requests a hearing. A debtor's ability to dismiss a chapter 7 case is not absolute. Rather, a chapter 7 case can only be dismissed for cause. In this case, the Debtor cannot establish cause and her case should not be dismissed. For the reasons set forth more fully below, the Trustee requests the Court deny the Debtor's motion to dismiss.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157. Although the Debtor cites no statutory basis for the relief requested in her motion, the Trustee believes the Debtor is seeking relief pursuant to § 707(a) of the Bankruptcy Code.

**Statement of Facts**

1. The Debtor filed her voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 11, 2020 (the "Petition Date").

2. The necessary schedules and statement of financial affairs accompanied her voluntary petition.

3. On Schedule I, the Debtor lists her primary employer as the University of Akron. She also lists employment income from teaching positions at Lakewood College and University of Cumberlands. At the May 5, 2020, 341 meeting in this case, the Debtor testified that those positions were the sole source of her income. The Debtor left blank the section of the Statement of Financial Affairs where she was required to list her past annual income.

4. The Debtor testified at the 341 meeting on May 5, 2020 that her prior employer was Rockwell Automation, Inc. ("Rockwell"). She testified that she filed for relief under chapter 7 of the Bankruptcy Code, in part, because she lost her job at Rockwell in December or January, 2020.

5. The Debtor disclosed two bank accounts in her Schedule A/B, one at US Bank and one at Chase. At the 341 meeting, Debtor identified those two accounts as Chase Account ending 7259 and US Bank Account ending 6297. The Debtor denied having any other depository accounts open on the Petition Date or closed within the year prior to the Petition Date.

6. The Debtor listed an STRS account with a value of $1,000 on her Schedule A/B. No other retirement or investment accounts are listed.

7. The Debtor did not disclose any transfers of money, personal property, or real property on her Statement of Financial Affairs, other than payments totaling $1,529 made to Apprisen in the first half of 2019 and the repossession of a vehicle by Ally Financial in 2019.

8. The Debtor did not list ownership, past or present, of any real estate on Schedule A or in her Statement of Financial Affairs. During the course of the 341 exam on May 5, 2020, the Debtor denied, on several occasions, having ever owned any real estate, despite a direct inquiry by the Trustee and a creditor representative who participated in the 341 exam, as to the Debtor's past or present ownership of real property with an address of 22094 Marberry Commons. In fact, the Debtor insisted that, despite her representation on a credit application supplied to the creditor early

in 2019 that she owned the Marberry Commons property, she did not own the property, but was a tenant renting that property from a third party.

9. The Trustee believes the Debtor has been less than candid in her Schedules and Statement of Financial Affairs and in her testimony at the 341 meetings in this case with respect to, *inter alia*, her income and transfers of her property prior to the Petition Date.

**Income and Assets**

10. Based on a review of the Debtor's 2018 and 2019 tax returns, the Debtor's W2 wages were $160,833 and $134,147, respectively. Upon information and belief based on information provided by Rockwell representatives, including copies of paystubs through March 27, 2020, the Debtor did not lose her job at Rockwell in January, 2020. To the contrary, the Debtor is now and was on the Petition Date gainfully employed at Rockwell and is receiving payroll deposits from Rockwell into her personal bank accounts.

11. In addition, the Debtor's 2019 tax returns reveal income of $28,000 from a pension or annuity. The Debtor has yet to identify the source of this income to the Trustee. Upon information and belief based on information provided by Rockwell and Chase Bank in response to subpoenas issued by the Trustee, it appears the $28,000 was withdrawn from the Debtor's undisclosed retirement account at Fidelity and deposited into one of her bank accounts.

12. Upon information and belief based on documents provided by Chase and US Bank in response to subpoenas issued by the Trustee, the Debtor failed to disclose several bank accounts that were open on the Petition Date or were closed within the year prior to the Petition Date. Specifically, the Debtor was the signatory and/or owner of the following undisclosed bank accounts: Chase Account ending 5930, Chase Account ending 3276 (closed in March, 2019), US Bank Account ending 1289 (closed in October, 2019).

13. In addition, based on a review of paystubs for Debtor's continuing employment at Rockwell, the Trustee believes there are at least two additional undisclosed depository accounts open on the Petition Date, as a portion of Debtor's payroll is deposited into accounts ending 2631 and 1146.

14. The Trustee has determined, by means of a public records search and the issuance of a subpoena to Terra Blue Title Agency, LLC, that the Debtor was the owner of the Marberry Commons property in 2019 and that the Debtor sold the Marberry Commons property in December, 2019 for approximately $60,500.

15. The Debtor directed $37,220.96 from the sale of the Marberry Commons be deposited into her undisclosed Chase Bank Account ending 5930 which account the Debtor identified to the Title Company as being in her name. In addition, $18,000 of the proceeds from the sale of the Marberry Commons property were paid to Simmons, Andrews and Associates LLC, which the Trustee believes is owned by the Debtor's father, John E. Simmons, as mortgagee on the parcel of real estate.

16. In sum, the Trustee believes, based on the review of public records and information provided from third parties pursuant to subpoena, that from October 1, 2019 to the Petition Date, in addition to her regular payroll deposits, the Debtor received over $61,000 into her bank accounts.

**Transfers**

17. The Debtor did not disclose the payment to or for the benefit of her father from the proceeds of the sale of the Marberry Commons property.

18. Based on a review of the bank statements provided by Chase and US Bank in response to subpoena, the Trustee believes that within the six months before the Petition Date the Debtor made transfers of over $29,139 to friends, relatives, and third parties from her bank accounts which she did not disclose in her Statement of Financial Affairs. The Trustee further believes many,

if not all, of these transfers are avoidable fraudulent or preferential transfers under the Bankruptcy Code and recoverable by the Trustee for the benefit of the creditors of this Bankruptcy Estate.

19. In addition, based on a review of the bank statements provided by Chase and US Bank in response to subpoena, the Trustee believes the Debtor made cash withdrawals or transfers to herself through Zelle to as yet undisclosed accounts during the six months prior to the Petition Date in excess of $45,921.50. Debtor has not accounted for the dissipation of almost $46,000 within close proximity to her bankruptcy filing despite the Trustee's repeated requests for such an accounting.

20. Despite the lack of cooperation from the Debtor, the Trustee has already identified several assets worthy of administration including, but not limited to, the pursuit of preference and/or fraudulent transfer actions against the Debtor's parents, friends, relatives, and other third parties.

**Law and Argument**

Section 707 of the Bankruptcy Code provides, in pertinent part,

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The Debtor's ability to dismiss her bankruptcy case is not absolute. *Sicherman v Cohara*, (*In re Cohara*), 324 B.R. 24, 27 (6th Cir. BAP 2005). The bankruptcy court can only dismiss the case for "cause." *In re Barnette*, 309 B.R. 516, 518 (Bankr. N.D. Ohio 2004) ([t]here is a presumption that once commenced, a Chapter 7 bankruptcy will proceed until the case is fully administered; [r]eflected in this policy is the rule that, unlike a Chapter 13 bankruptcy, an individual debtor has no right to dismiss a case commenced under Chapter 7 of the Bankruptcy Code; and [i]mplementing

this policy decision is § 707(a) of the Bankruptcy Code which conditions a dismissal of a Chapter 7 bankruptcy on the existence of 'cause.'). It is the debtor's burden to demonstrate sufficient cause. *See Cohara*, 324 B.R. at 27.

Cause is not defined in § 707(a) of the Bankruptcy Code and the examples of cause set forth in § 707(a) only apply when a nondebtor is the moving party. *In re Dzierzawski, 528 B.R. 397* (Bankr. E.D. Mich. 2015).

When the debtor is the movant, courts generally weigh several factors to determine whether the debtor has met the burden of establishing sufficient cause for dismissal. *See Id.* Among the factors courts consider are the following: 1. whether all of the creditors have consented; 2. whether the debtor is acting in good faith; 3. whether dismissal would result in a prejudicial delay in payment; 4. whether dismissal would result in a reordering of priorities; 5. whether there is another proceeding through which the payment of claims can be handled; 6. whether an objection to discharge, an objection to exemptions, or a preference claim is pending. *Id.* Other factors that courts have considered in determining whether there is sufficient cause to dismiss a case under § 707(a) include: (1) whether dismissal is in the best interest of the debtor; (2) whether dismissal is in the best interest of the creditors; (3) whether dismissal would result in an abuse or manipulation of the system; and (4) whether dismissal is justified by compelling equitable principles. *Id.*

In this case, the factors weigh against granting the relief sought by the Debtor. The only basis for the relief requested set forth by the Debtor is that her income has increased post-petition and she can resolve her financial affairs with creditors without the aid of proceedings under the Bankruptcy Code, arguing, that state law remedies will afford a better recovery for creditors. To the contrary, the Debtor has had significant annual income for the past several years. Despite that income, the Debtor appears to have chosen to pay friends and family members rather than her creditors. There is no basis to believe that the Debtor will suddenly change her behavior and

actually make payments to her creditors. In contrast, the administration of this bankruptcy case would afford creditors the opportunity to receive payments on their debts in relatively short order, particularly compared to the race to the courthouse recovery and garnishment process the Debtor suggests will make her creditors whole.

In addition, there is no evidence to support the Debtor's blanket statement that her income has increased since the date of filing and, even if that is the case, the Debtor's ability to pay does not establish sufficient cause to dismiss this case.

> "[A] debtor's ability to repay her debts will not, on its own, constitute 'cause' for dismissal." *In re Hopkins*, 261 B.R. 822, 823 (Bankr. E.D. Pa. 2001); *see also Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000); *In re Foster*, 316 B.R. 718, 721 (Bankr. W.D. Mo. 2004). "If dismissal would prejudice the creditors, then it will ordinarily be denied." *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.),* 857 F.2d 1061, 1063 (5th Cir. 1988). *See also In re Harker,* 181 B.R. 326, 328 (Bankr. E.D. Tenn. 1995) ("[I]f creditors are prejudiced in any respect by the dismissal or if the trustee has acquired funds for distribution, a request by the debtor for dismissal will be denied."). "Prejudice exists where assets which would be available for distribution are lost as a result of the dismissal." *In re Byam*, No. 02-80538, 2002 WL 32123991, at *1 (Bankr. C.D. Ill. Aug. 14, 2002) (citing *In re McCullough*, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999)).

*Cohara,* 324 B.R. 24. In addition, if her case is dismissed assets like the avoidable transfers identified by the Trustee may be lost resulting in prejudice to creditors of this estate. In similar circumstances, courts have held that dismissal should be denied when assets to satisfy such creditors have been identified by the Trustee. *In re Kandola*, 2009 WL 158774 (Bankr. N.D. Ohio April 20, 2009) (dismissal denied for lack of cause where Trustee had identified a property interest that could potentially satisfy creditors and dismissal would prejudice such creditors).

Furthermore, as evidenced by her failure to be truthful and cooperate with the Trustee and the errors and omissions in the documents she filed with this Court, the Debtor has not been acting in good faith throughout the course of this Chapter 7 case. Her motion to dismiss is only further

evidence of her intent to thwart the bankruptcy process and deny the Trustee the ability to determine the full extent of assets available for administration and to recover same for the benefit of creditors. The Debtor voluntarily commenced this bankruptcy case. Now that the Trustee has identified assets for administration and continues to engage in discovery to determine the full extent of those assets, the Debtor attempts to thwart those efforts by seeking dismissal of this case. Granting such a request would reward the Debtor for her lack of candor and prejudice her creditors.

A request for dismissal should not be granted to a dishonest debtor who has lied on her schedules and statement of financial affairs and to the Trustee in the course of her 341 examination, who has concealed assets and transfers of assets just prior to filing for relief under Chapter 7, and who has refused to cooperate with the Trustee in the course of her administration of the Chapter 7 case, particularly not in a case where the Trustee has identified non-exempt assets for administration and has been hindered by the Debtor in her efforts to identify additional non-exempt assets. Simply put, a dismissal of this case would be an abuse and a manipulation of the bankruptcy system.

**WHEREFORE,** the Trustee requests the Court hold a hearing with respect to the relief requested by the Debtor, sustain the Trustee's objection, deny the Debtor's Motion to Dismiss, and grant such further relief as the Court may deem appropriate.

    Respectfully submitted,

    /s/ Julie K. Zurn
    Julie K. Zurn 0066391
    Brouse McDowell
    388 S. Main Street, Suite 500
    Akron, OH 44311
    Tel (330) 535-5711
    jzurn@brouse.com

1098429.3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically transmitted on or about July 22, 2020 via this Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice List:

U.S. Trustee
Wilhelmina Huff, Counsel for Debtor(s)

and to the following via regular U.S. mail on July 22, 2020:

MIA SIMMONS, Debtor
1268 CANYON VIEW RD.
NORTHFIELD, OH 44067

/s/ Julie K. Zurn
Julie K. Zurn  #0066391