UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO.  20-50569-AMK |
| | ) | |
| MIA SIMMONS, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE ALAN M. KOSCHIK |
| | ) | |
| JULIE K. ZURN, TRUSTEE, | ) | |
| | ) | ADV. NO. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR AVOIDANCE OF |
| RONNIE L. HOLMAN | ) | FRAUDULENT TRANSFER PURSUANT TO |
| 1214 E. 83rd Street | ) | 11 U.S.C. §§ 548 and 544 and OHIO REVISED |
| Cleveland, Ohio 44103 | ) | CODE § 1336.01 et seq., AVOIDANCE OF |
| | ) | UNAUTHORIZED POST-PETITION |
| Defendant. | ) | TRANSFER, AND RECOVERY OF |
| | ) | AVOIDABLE TRANSFERS PURSUANT TO |
| | ) | 11 U.S.C. § 550; TURNOVER OF PROPERTY |
| | ) | OF THE ESTATE |

JULIE K. ZURN (the "Trustee"), by and through undersigned counsel, hereby alleges and complains against RONNIE L. HOLMAN ("Holman") as follows:

**NATURE OF ACTION**

1.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 and sections 542, 544, 548, 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Ohio Revised Code § 1336.01 et seq. seeking avoidance and recovery of fraudulent transfers. The action arises from the transfers of the property of Mia Simmons (the "Debtor") over the course of the two years prior to the Debtor's voluntary bankruptcy filing to or for the benefit of Holman, a man to whom she was not married and to whom she had no legal obligation to provide support, to the detriment of her unsecured creditors.

1

## JURISDICTION

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and General Order 2012-7 entered in this district on April 4, 2012. Venue is proper pursuant to 28 U.S.C. § 1409. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (H), and (O).

3.    In the event that any part of this adversary proceeding is found to be non-core, Plaintiff consents to the entry of final judgment by this Court.

## PARTIES

4.    On March 11, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief before this Court commencing the above-captioned chapter 7 bankruptcy case. The Debtor is an individual residing in Summit County, Ohio and is the Chapter 7 debtor in the above-captioned bankruptcy case.

5.    Trustee is the duly appointed, qualified and acting Chapter 7 trustee in the above-captioned bankruptcy case.

6.    Upon information and belief, Holman is a resident of Cleveland in Cuyahoga County, Ohio. Upon information and belief, Holman receives mail at 7504 Aberdeen Ave., Cleveland, Ohio 44103 and at 1214 E. 83rd St., Cleveland, OH 44103.

## FACTUAL ALLEGATIONS

7.    Holman and the Debtor were involved in a long-term romantic relationship that, upon information and belief, began in 2009 and lasted through the beginning of 2020.

8.    Upon information and belief, while he was in a relationship with the Debtor and until July 20, 2020, Holman was married to someone other than the Debtor.

9.    Upon information and belief, Debtor and Holman were not married prior to the Petition Date.

10.     During the two-year period prior to the petition date, the Debtor was not paying her debts as they came due and the Debtor's liabilities exceeded the fair value of her assets.

11.     The Debtor owes the IRS over $6,080 for the 2018 tax year and over $16,000 for the 2019 tax year, as reflected in the proof of claim filed by the IRS on August 18, 2020 in the Debtor's bankruptcy case.

12.     During their relationship, Debtor and Holman were the owners of a joint bank account at Chase Bank, account ending 5930 (the "Chase Account").

13.     During the one-year period prior to the Petition Date, Debtor deposited her wages from employment in an amount in excess of $24,000 into the Chase Account.

14.     During the one-year period prior to the Petition Date, Debtor deposited proceeds in an amount not less than $37,220.96 from the sale of real estate owned in her name into the Chase Account.

15.     During the one-year period prior to the Petition Date, Debtor deposited distributions in an amount not less than $22,883.00 from her retirement accounts into the Chase Account.

16.     Upon information and belief, Debtor's income is the sole source of all deposits into the Chase Account during the one-year prior to the Petition Date.

17.     From February 1, 2019 to the Petition Date, the Debtor had at least three other bank accounts, one at Bank of America ending 1146, one at US Bank ending 6297, and an additional account at Chase ending 7259. Upon information and belief, these accounts were owned solely by the Debtor.

18.     Upon information and belief, Debtor's income is the source of the deposits into the Bank of America account ending 1146, the U.S. Bank account ending 6297, and the additional Chase account ending 7259.

3

## PURCHASES AND CASH PAYMENTS

19.     Upon information and belief, based on his testimony at his 2004 examination, Holman had access to the ATM/Debit Card for the Chase Account and used the Debit Card to make purchases for himself.

20.     In addition, Holman received transfers into his Cash App and other individual depository accounts from the Debtor's bank accounts, including the Chase Account, from February 1, 2019 to March 11, 2020 totaling $12,416.50, as shown on Exhibit A, incorporated herein by this reference (collectively referred to herein as the "Cash Transfers"). "Cash App" is a peer to peer money transfer service and financial platform offered by Square, Inc. that allows a user (like Holman) to set up an account to receive money from, or send money to, another user.[1]

21.     The Debtor did not receive anything of value in exchange for the purchases by Holman or the Cash Transfers to Holman.

## DEBT PAYMENTS FOR DEBT OWED ONLY BY HOLMAN

22.     In addition to the point-of sale-purchases made by Holman and the Cash Transfers, Debtor's money was transferred from the Chase Account and the Debtor's other bank accounts to pay debts owed by Holman.

23.     On December 5, 2019, Debtor transferred $2,492 to St. Ignatius from her Bank of America account ending 1146 to pay an obligation owed by Holman.

24.     On October 24, 2019, Debtor transferred $2,800 to Ken Barnett from her Chase Account to pay an obligation owed by Holman.

25.     The Debtor did not receive anything of value in exchange for the transfers to St. Ignatius or Ken Barnett (collectively, the transfers are referred to herein as the "Debt Payments").

---

[1] *See* Cash App, Additional Cash Terms of Service, *available at* https://cash.app/legal/us/en-us/tos (last accessed January 23, 2021).

## POST PETITION DEBT SETTLEMENT PAYMENTS

26.     Upon information and belief, in September 2019, Debtor entered into an arrangement with Sharron Williams for debt management services. The Debtor paid a total of $20,000 to Sharron Williams from her Chase Account under this agreement (the "Debt Settlement Money").

27.     The Debt Settlement Money was paid in three equal payments of $2,000 each from Debtor's Chase Account in late October 2019 by direct transfer from the Chase Account to Sharron Williams and one payment of $14,000 from her Chase Account on December 6, 2019 from a cashier's check drawn on her Chase Account.

28.     On the Petition Date, Sharron Williams was still in possession of some of the Debt Settlement Money.

29.     On the Petition Date, the Debtor had a legal or equitable interest in the Debt Settlement Money remaining in possession of Sharron Williams.

30.     Upon information and belief, in March 2020, Sharron Williams paid $315.27 of the Debt Settlement Money to Portfolio Recovery for credit card debt owed by Holman.

31.     Upon information and belief, on June 12, 2020, Sharron Williams paid $1,754,16 of the Debt Settlement Money to Cleveland State University on account of past-due obligations owed by Holman.

32.     Upon information and belief, on July 17, 2020, Sharron Williams transferred $600 of the Debt Settlement Money to Holman.

33.     Upon information and belief, in August 2020, Sharron Williams paid $1,252.00 of the Debt Settlement Money to Revenue Group for medical debt owed by Holman.

34.     For her services, Sharron Williams charged $850. Her fee was paid using the Debt Settlement Money.

35.     The Debtor did not receive anything of value in exchange for the payment of debt owed by Holman as described in the preceding paragraphs.

5

36.     The transfers of the Debt Settlement Money in the total amount of $4,771.43 after the

Petition Date were done without authority of this Court or the Bankruptcy Code.

## FIRST CAUSE OF ACTION
### Avoidance of Fraudulent Transfers to Holman pursuant to 11 U.S.C. § 548(a)(1)(B) – Deposits, Purchases, Cash Transfers, Debt Payments

37.     The Trustee realleges and incorporates the paragraphs above as if fully rewritten herein.

38.     Section 548(a)(1) of the Bankruptcy Code provides that,

> The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> …
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

39.     Within the two years prior to the Petition Date, Property of the Debtor was transferred

to Holman by virtue of the deposit of her income, including without limitation, her wages, proceeds

from the sale of her real estate, and distributions from her retirement accounts, into the Chase account.

40.     Alternatively, property of the Debtor was transferred within the two years prior to the

Petition Date to or for the benefit of Holman in the form of purchases, Cash Payments, and Debt

Payments.

41.     Debtor received less than reasonably equivalent value in exchange for the deposits,

purchases, Cash Payments, and Debt Payments.

42.     Debtor was insolvent at the time of the deposits, purchases, the Cash Payments and

the Debt Payments or became insolvent as a result of making such transfers.

43.     The Trustee is entitled to judgment avoiding the deposits, purchases, the Cash

Payments and the Debt Payments in an amount to be determined at trial but believed to be no less than

$17,708.50 under 11 U.S.C. § 548(a)(1)(B).

**SECOND CAUSE OF ACTION**
**Avoidance of Fraudulent Transfers pursuant to 11 U.S.C. 544(b) and Ohio Revised Code 1336.01, et seq.**

44.     The Trustee realleges and incorporates the paragraphs above as if fully rewritten herein.

45.     Property of the Debtor was transferred to Holman by virtue of the deposit of her income, including without limitation, her wages, proceeds from the sale of her real estate, and distributions from her retirement accounts, into the Chase account.

46.     Alternatively, property of the Debtor was transferred to or for the benefit of Holman in the form of purchases, Cash Payments, and Debt Payments.

47.     Debtor received less than reasonably equivalent value in exchange for the transfers of her property.

48.     Debtor was insolvent at the time of the transfers or became insolvent as a result of the transfers.

49.     The purchases, Cash Payments, and Debt Payments constitute avoidable fraudulent transfers pursuant to section 544(b) of the Bankruptcy Code and Ohio Revised Code 1336.01, et seq.

50.     The Trustee is entitled to judgment avoiding the deposits, purchases, the Cash Payments and the Debt Payments in the amount of no less than $17,708.50 under section 544(b) of the Bankruptcy Code.

**THIRD CAUSE OF ACTION**
**Avoidance of Post-Petition Transfer of Property Pursuant to 11 U.S.C. § 549**

51.     The Trustee realleges and incorporates the paragraphs above as if fully rewritten herein.

52.     On the Petition Date, Sharron Williams was in possession of property of the estate, to wit, the remaining Debt Settlement Money in her possession.

53.     On the Petition Date, Sharron Williams was obligated to turn over the property of the estate to the Trustee pursuant to section 542 of the Bankruptcy Code.

7

54. Without authority of the Court or the provisions of title 11 of the United States Code, the remaining Debt Settlement Money was transferred to or for the benefit of Holman.

55. As a direct and proximate result of the post-petition transfers of property of the estate, the estate was damaged in the amount of $4,771.43.

56. The Trustee is entitled to judgment avoiding the transfers of the Debt Settlement Money in the amount of no less than $4,771.43 under section 549 of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
### Recovery of Transfer from Defendant for the Benefit of the Estate Pursuant to 11 U.S.C. § 550

57. The Trustee realleges and incorporates the paragraphs above as if fully rewritten herein.

58. The deposits of income into the Chase Account, the purchases, Cash Transfers, Debt Payments, and transfers of the Debt Settlement Money may be avoided under sections 544, 548, and 549 of the Bankruptcy Code and applicable state law.

59. The Defendant, Holman, received the transfers or he is the individual for whose benefit the transfers were made, and, as such, the Trustee may recover from Holman the property or the value of the property transferred.

60. Pursuant to section 550(a), the Trustee is entitled to recover from the Defendant the deposits into the Chase Account, the purchases, the Cash Payments, the Debt Payments, and the transfers of the Debt Settlement Money or the value of those transfers, in an amount to be determined at trial but believed to be not less than $22,479.93 plus interest thereon to the date of payment and costs of this action.

**WHEREFORE**, Trustee respectfully requests this Court to enter judgment against Defendant, Holman:

(a) As to the first and second claims for relief, judgment against Defendant avoiding the deposits, purchases, the Cash Payments and the Debt Payments in an amount to be determined at trial but believed to be no less than $17,708.50;

8

(b)     As to the third claim for relief, judgment against Defendant avoiding the transfers of the Debt Settlement Money in an amount to be determined at trial but believe to be no less than $4,771.43;

(c)     As to the fourth claim for relief, that Defendant be directed to return to Plaintiff the amount of the avoided transfers set forth above;

(d)     That judgment be entered for Plaintiff and against Defendant for interest, costs of suit, attorneys' fees to the extent permitted by law, and such other and further relief as the Court deems just and proper.


Respectfully submitted,

Dated: January 25, 2021

BROUSE MCDOWELL

/s/ Matthew Vansuch
Matthew Vansuch (0079328)
Julie K. Zurn (#0066391)
6500 Seville Dr., Suite B
Canfield, OH 44406
Tel. (330) 533-6195
Fax (330) 533-6198
mvansuch@brouse.com
jzurn@brouse.com
Counsel for the Trustee

9

Chase 5930

| 2019 | | |
|---|---|---|
| | 2/21 | $45.00 |
| | 2/25 | $497.00 |
| | 2/25 | $200.00 |
| | 2/25 | $15.00 |
| | 3/4 | $100.00 |
| | 3/4 | $108.00 |
| | 4/1 | $109.00 |
| | 4/1 | $100.00 |
| | 4/1 | $200.00 |
| | 4/15 | $40.00 |
| | 4/15 | $100.00 |
| | 4/15 | $60.00 |
| | 4/15 | $100.00 |
| | 5/13 | $360.00 |
| | 5/28 | $425.00 |
| | 6/24 | $75.00 |
| | 6/24 | $40.00 |
| | 7/5 | $40.00 |
| | 8/5 | $80.00 |
| | 8/5 | $50.00 |
| | 8/16 | $100.00 |
| | 9/30 | $100.00 |
| | 9/30 | $6.00 |
| | 10/15 | $340.00 |
| | 10/15 | $225.00 |
| | 10/25 | $1,000.00 |
| | 10/25 | $175.00 |
| | 10/25 | $100.00 |
| | 10/28 | $258.00 |
| | 10/28 | $399.00 |
| | 11/1 | $250.00 |
| | 11/14 | $5.00 |
| | 12/2 | $100.00 |
| | 12/2 | $40.00 |
| | 12/2 | $29.00 |
| | 12/5 | $300.00 |
| | 12/6 | $400.00 |
| | 12/9 | $250.00 |

10

|  |  |  |
|---|---|---|
|  | 12/10 | $300.00 |
|  | 12/10 | $200.00 |
|  | 12/16 | $500.00 |
|  | 12/16 | $100.00 |
|  | 12/17 | $100.00 |
|  | 12/19 | $1,300.00 |
|  | 12/23 | $90.00 |
|  | 12/23 | $210.00 |
|  | 12/23 | $50.00 |
|  | 12/23 | $100.00 |
| 2020 | 1/3 | $100.00 |
|  | 1/3 | $360.00 |
|  | 1/6 | $100.00 |
|  | 1/6 | $60.00 |
|  | 1/7 | $150.00 |
|  | 1/8 | $25.00 |
|  | 1/9 | $60.00 |
|  | 1/13 | $40.00 |
|  | 1/17 | $60.00 |
|  | 1/21 | $30.00 |
|  | 1/21 | $80.00 |
|  | 1/24 | $20.00 |
|  | 1/28 | $100.00 |
|  | 2/18 | $50.00 |
|  | 2/18 | $60.00 |
|  | 2/18 | $150.00 |
|  | 2/19 | $20.00 |
|  | 2/21 | $50.00 |
|  | 2/24 | $60.00 |
|  | 3/2 | $606.00 |
| Chase 7259 | 9/16 | $2.00 |
|  | 7/26 | $200.50 |
| US Bank 6297 | 9/16 | $2.00 |
| Bank of America 1146 | 9/12 | $40.00 |
|  | 9/12 | $220.00 |
|  | TOTAL | $12,416.50 |

20-50569-amk   Doc 101   FILED 01/25/21   ENTERED 01/25/21 13:45:30   Page 11 of 11